UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| KENNETH A. DAUGHETY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-00841-NCC |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Kenneth A. Daughety ("Plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq.*, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 17) and Defendant has filed a brief in support of the Answer (Doc. 21). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

## I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on May 6, 2013 (Tr. 178-192). Plaintiff was initially denied on August 23, 2013, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 119-123, 124-128). After a hearing, by decision dated

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

April 16, 2015, the ALJ found Plaintiff not disabled (Tr. 7-27). On May 2, 2016, the Appeals Council issued a decision denying Plaintiff's request for review (Tr. 1-4). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since November 18, 2011, the alleged onset date (Tr. 12). The ALJ found that the Plaintiff has the following medically determinable impairments: hypertension, Barrett's esophagus, diabetes mellitus, chronic obstructive pulmonary disease ("COPD"), chronic liver disease and cirrhosis, affective disorder, personality disorder, attention deficit hyperactivity disorder ("ADHD"), and substance addiction disorder, but that no impairment or combination of impairments significantly limit (or is expected to significantly limit) Plaintiff's ability to perform basic work-related activities for 12 consecutive months (*Id.*). Thus, the ALJ found that Plaintiff does not have a severe impairment or combination of impairments and has therefore not been under a disability from November 18, 2011 through the date of the decision, April 16, 2015 (Tr. 12, 23).

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as

2

"any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931

n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

4

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff asserts that the ALJ failed to properly consider Step 2 of the sequential evaluation. Specifically, Plaintiff argues that the ALJ erred in determining that Plaintiff's diabetes mellitus with neuropathy, depression, and antisocial personality disorder (ASPD) were not severe impairments. Because the ALJ erred in not finding that Plaintiff's depression is a severe impairment, the Court will address that issue alone.

At Step 2, the Commissioner must determine whether a claimant has a severe impairment. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. While a claimant has the burden of showing a severe impairment that severely limits his physical or mental ability to perform basic work activities, the burden "is not great" and "[t]he sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his] ability to work." *Caviness*, 250 F.3d at 605. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).

The ALJ erred in not finding that Plaintiff's depression is a severe impairment. First, Plaintiff listed depression as an impairment on his application (Tr. 210). *See cf. Dunahoo v.*

5

*Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (observing that a failure to allege depression in an application for benefits is significant, even if the evidence of depression was later developed). Indeed, the record is replete with Plaintiff's reports of depression. For example, on September 11, 2013 and then again on June 26, 2014, Plaintiff reported a long history of depression (Tr. 401, 419). Plaintiff also testified at his hearing that despite his ongoing treatment, as detailed below, he was still depressed, slept no more than two hours at a time, had difficulty focusing on things, and had trouble getting along with others (Tr. 71).

Second, while the ALJ spends a considerable amount of time in her decision addressing Plaintiff's noncompliance with and failure to seek mental health treatment, the record reflects that Plaintiff may not have had the requisite insight or memory to understand the need to comply with treatment recommendations. *Cf. Pate-Fires v. Astrue*, 564 F.3d 935, 945-47 (8th Cir. 2009). For example, Plaintiff reports that his depression "has killed [his] motivation to do much and affects my memory, concentration, focus, and ability to get along with others" (Tr. 222). The record supports this self-assessment; Dennis A. Velez, M.D., a consultative examiner, noted that Plaintiff has difficulties with memory as did Erin E. Fulkerson, Psy.D., a psychology resident who provided Plaintiff counseling as his therapist (Tr. 359, 457). Dr. Fulkerson contributed Plaintiff's non-compliance to his "lack of concern for self" (Tr. 459).

While Plaintiff did not initially seek treatment from a traditional mental health provider, the record reflects that Plaintiff was, for a time, provided mental health care from the Internal Medicine Clinic at Barnes Jewish Hospital (*See, e.g.,* Tr. 253, 260, 265). *Cf. Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) (the failure to seek treatment may be considered as inconsistent with a finding of disability). Despite his compliance with psychotropic medication as prescribed, Plaintiff reported that "he does feel worthless at times" and that "his mood is down, his life is

going nowhere" (Tr. 285, 291). The staff at the Internal Medicine Clinic referred Plaintiff to the Collaborative Care Clinic for a psychiatric consultation for further evaluation of his depression (Tr. 295). Accordingly, on February 18, 2013, Plaintiff was examined by Bonnie Applewhite, M.D., a psychiatrist ("Dr. Applewhite") (*Id.*). In her treatment notes, Dr. Applewhite diagnosed Plaintiff with depression and antisocial personality disorder, finding Plaintiff at "a chronically high risk of self-harm" (Tr. 297-96). Plaintiff appears to have then been re-referred to the Internal Medicine Clinic for ongoing psychiatric care (*See, e.g.,* Tr. 299).

Regardless, the record reflects that Plaintiff began counseling in November of 2014 (Tr. 378, 458) and had been attending his counseling sessions regularly at the time of his hearing (Tr. 64). *Cf. Lawson v. Colvin*, No. 4:13-CV-1361 SNLJ, 2014 WL 4269050, at *15 (E.D. Mo. Aug. 28, 2014) (finding the plaintiff not disabled when "[t]he record shows she neither sought nor received psychiatric treatment during the time of her alleged disability."). At the hearing, Plaintiff also noted that he had begun seeing a psychiatrist who had taken over prescribing his psychotropic medication (Tr. 64). Indeed, Plaintiff began treatment at Crider Health Center with Adolph Herath, M.D., in February of 2015 at the referral of Dr. Fulkerson (Tr. 470). *Cf. Matthews v. Bowen*, 879 F.2d 422, 424-25 (8th Cir. 1989) (prescription of antidepressants alone does not demonstrate that the claimant is disabled). The Court also notes that the ALJ notes *six* past suicide attempts, but indicates that none had serious medical consequences (Tr. 16) (emphasis added). Dr. Velez also stated that Plaintiff "does have a history of attempted suicide in 2007 from cocaine use and abuse" (Tr. 359). *Cf. Harrison v. Colvin*, No. 2:14 CV 43 DDN, 2015 WL 5560256, at *5 (E.D. Mo. Sept. 21, 2015) (discounting Plaintiff's past history of two suicide attempts when they occurred approximately 20 years prior to the alleged onset date).

Third, the medical opinion evidence indicates that Plaintiff's depression is perhaps more limiting than as suggested by the ALJ. Specifically, in a letter dated December 19, 2013, Dr. Fulkerson and Jill Swartwout, Psy.D., a licensed psychologist and Dr. Fulkerson's supervisor, diagnosed Plaintiff with several mental health disorders including "Persistent Depressive disorder, with anxious distress, early onset, with persistent major depressive episode, moderate-severe" (Tr. 458). They further indicate that Plaintiff has "struggled with thoughts of suicide in the context of his depression" and that Plaintiff's "concentration and ability to focus is inconsistent, due to his tendency to 'tune out' when he experiences negative emotions. [Plaintiff] also presents with memory difficulties. … [H]e reports levels of anger that would likely preclude him from interacting safely with the public" (Tr. 458-59). Although the ALJ assigned the opinion "some weight," in doing so the ALJ notes that Dr. Fulkerson had only been treating claimant for a short time and treatment notes were not provided (Tr. 21).

Fourth, Plaintiff's depression would significantly limit his ability to work. Plaintiff indicates in a Function Report-Adult dated May 30, 2013 that he has issues with sleeping, stating that he usually does not sleep for more than four hours at a time because he has "a hard time making [his] mind shut down" and has to take at several naps per day for approximately 60 minutes at a time (Tr. 217-18). He also reports that he has trouble getting along with people and tries to avoid people and crowds (Tr. 217). Although the ALJ found Plaintiff's reports to be noncredible, largely due to his noncompliance as addressed above, even if the Court were to discount these subjective statements, the record supports significant limitations. For example, Dr. Fulkerson indicates that Plaintiff's symptoms impact Plaintiff "by reducing his ability to attend to his needs on a consistent basis, such as grooming, eating an appropriate diet, cleaning his home, planning and organizing, and participating in social events" (Tr. 458). Dr. Fulkerson

continued, "he struggles to meet his needs with regard to engaging in social interacting in his community, having adequate concentration/focus, maintaining a clean and healthy home, [and] getting adequate sleep. . . (*Id.*)." Further, although he found Plaintiff's depression a non-severe impairment, even Stephen Sher, Ph.D., a state agency non-examining source, in his August 22, 2013 review of the record, limited Plaintiff to mild limitations in the following areas: maintaining social functioning and maintaining concentration, persistence or pace (Tr. 111-12).

Finally, in a prior decision dated November 17, 2011, the Commissioner found Plaintiff to have the severe impairment of depression (Tr. 84). At that time, the only record relating to Plaintiff's depression appeared to be a rather unremarkable consultative exam (*See* Tr. 86).

Accordingly, the Court finds that remand is required because the ALJ's determination that Plaintiff's depression was not a severe impairment is not supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand, the ALJ is directed to reconsider Plaintiff's severe impairments at step two; further develop the medical record if necessary; and then proceed through the sequential evaluation process before issuing a new decision.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Order.

Dated this 13th day of September, 2017.

                                                     /s/ Noelle C. Collins
                                                    NOELLE C. COLLINS
                                                    UNITED STATES MAGISTRATE JUDGE